KAYE, ROSE & PARTNERS, LLP
Bradley M. Rose, State Bar No. 126281
brose@kayerose.com
Frank C. Brucculeri, State Bar No. 137199
fbrucculeri@kayerose.com
9100 Wilshire Blvd., Suite 420W
Beverly Hills, CA 90212
Phone: (310) 551-6555
Fax: (310) 277-1220

Attorneys for Defendant HURRICANE NAVIGATION INC.

Kaye, Rose & Partners, LLP

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

TMF TRUSTEE LIMITED,

Plaintiff,

v.

M/T MEGACORE PHILOMENA, her engines, boilers, tackles, and other appurtenances, etc., *in rem*; HURRICANE NAVIGATION INC., a Marshall Islands Corporation, *in personam*,

Defendants.

And related cross-actions.

Case No.: 2:17-cv-9010-AGR

IN ADMIRALTY

**HURRICANE'S EX PARTE APPLICATION FOR RECONSIDERATION OF ORDER TO SELL VESSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Room: 550
Judge: Hon. Alicia G. Rosenberg

**Telephonic hearing requested**

## INTRODUCTORY STATEMENT, GROUNDS FOR EX PARTE RELIEF

TMF moved to compel the sale of *Philomena*, the subject vessel, on February 20, 2018. In its opposition to that motion, filed on March 13, 2018,

Kaye, Rose & Partners, LLP

Hurricane expressed several reasons why ordering a sale would be premature, irremediably prejudicial to Hurricane, in violation of the governing loan agreement, and manifestly unfair. More specifically, Hurricane argued that the costs of arrest were not truly "excessive" by any reasonable construction of that term; and that Hurricane had not been dilatory in attempting to refinance or bond out the vessel. On the contrary, Lenders' efforts to pre-market the vessel had effectively shut down any viable market for refinancing and depressed the value of the vessel, precluding a sale at a fair market price.

The Court provisionally granted TMF's motion by unsigned minute order dated July 10, 2018, stating that a final order would follow (Dkt. 230). The Court then entered an order on July 20, 2018. The substance of that July 20 order had been drafted by TMF's counsel and contained at least two findings that substantively deviated from the terms of the Court's initial minute order (Dkt. 245). Those discrepancies prompted the Court to issue a third and final order on August 7, 2018, after a conference call with counsel for all parties (Dkt. 264). By that final amended order of August 7, 2018, the Court granted TMF's motion for interlocutory sale of the vessel, amending some aspects of the July 20 order. The sale, by public auction, is now set for 10:00 a.m. on September 11, 2018.

Since the time of Hurricane's opposition to TMF's motion for interlocutory sale, discovery has unearthed several previously unknown but important facts that directly relate to the statutory grounds by which a sale may be ordered. The Court did not have occasion to consider those facts, as they were only discovered in the course of depositions and document productions that occurred well after briefing on the sale motion had been completed.

Hurricane brings the instant motion for reconsideration on an ex parte basis because doing so by regular noticed motion would not allow the motion to be heard and decided before the scheduled sale date of September 11, 2018. The newly-acquired evidence must be brought before the Court well in advance of the

sale date: In the event that the Court affirms its August 7, 2018 Order granting TMF's motion for sale, Hurricane will be appealing the adverse judgment to the Ninth Circuit and then immediately seeking a stay of that Order. Any delay in the deciding of the instant motion for reconsideration would unduly prejudice Hurricane's ability to obtain that stay. It is therefore imperative that the instant motion be heard and decided without delay.

## ARGUMENT

### A. The Court's stated reasons for disbelieving Hurricane's claims that TMF's conduct prevented it from selling, refinancing, or bonding the vessel have been undermined by deposition testimony and documents acquired after the submission of briefing.

*1. Reconsideration is proper because new, previously unavailable evidence has come to light that directly undermines the Court's reasoning.*

In this judicial district, the Local Rules augment the corresponding Federal Rules of Civil Procedure that set forth the grounds upon which a party may move for reconsideration of a final judgment. Those Local Rules allow a motion for reconsideration only if there exists either (a) a material difference in fact or law from that presented to the Court before the Court rendered its decision, where those matters could not have been known to the moving party with the exercise of reasonable diligence; (b) the emergence of new and material facts or a change of law that occurred after the date of the Court's decision; or (c) a manifest showing that the Court had failed to consider material facts that had been presented to it. L.R. 7-18.

The corresponding Federal Rules of Civil Procedure, as interpreted by the Ninth Circuit, allow reconsideration of a judgment where the Court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d

1255, 1263 (9th Cir. 1993); *see also 389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999).

As will be more fully explained below, deposition testimony and documents acquired after the conclusion of briefing undermine the Court's expressed reasoning for disbelieving Hurricane's argument that it was Lenders' and TMF's conduct in the marketplace that prevented Hurricane from either selling or refinancing the vessel (the ability to secure a bond for *Philomena*'s release being essentially impossible due to Hurricane being a non-U.S.-based entity).[1]

*2. Lenders and TMF, in cahoots with brokers and TMF's counsel, actively attempted to pre-sell the vessel at a severely discounted price, efforts that inhibited Hurricane's ability to sell, refinance, or bond the vessel.*

As Hurricane had already informed the Court in its previous briefing,[2, 3] in or around February of 2018, counsel for TMF had given a list of specific vessel-related documents to a representative of the custodian of the vessel. The custodian's representative then boarded the arrested vessel and, feigning authority of the U.S. Marshal, demanded that the captain, a represented party, turn over the vessel-related documents described in that list (fn 3). The captain, of course, reported the encounter to Hurricane's counsel, who then confronted

---

[1] As Hurricane's counsel explained at oral argument, a foreign vessel owner brought before a U.S. court to assert its rights to the seized vessel has no realistic opportunity to obtain a bond. U.S.-based surety companies see foreign bondholders as a high risk. As a result, they require enormous security, which usually consists of cash security in a U.S. bank account in the amount of the bond, in addition to a 10 to 20 percent premium.

[2] See Hurricane's opposition to TMF's Motion for Supplemental Arrest, pp. 1 – 2, fn 1 (Dkt. 99).

[3] Hurricane's Opposition to TMF's Motion for Interlocutory Sale, p. 2; Brucculeri Declaration, March 13, 2018, at ¶¶ 3 – 11, attaching as Ex. A email dated February 15, 2018 from Patrick Ehrich to Captain Gostev (Dkt. 132).



Kaye, Rose & Partners, LLP

counsel for TMF with what appeared to be gross misconduct on their part: namely, that counsel was actually a party not only to the false impersonation of a federal officer but to attempting to surreptitiously obtain documents outside of normal discovery procedures (Id.).[4] Counsel for TMF assured Hurricane's counsel that TMF itself had nothing to do with that document demand, and that the idea and direction to execute it derived exclusively from the office of TMF's counsel.[5]

Hurricane tried to persuade the Court that the conduct of TMF's counsel constituted an attempt on the part of TMF to "pre-sell" the vessel: that is, that TMF or Lenders (or all of them) sought to obtain those documents in order to quickly disseminate specific details about the ship to the small segment of the market who could be considered potential buyers of such an expensive and use-specific vessel. Hurricane also showed the Court, through sworn statements, that Hurricane had been stymied in its efforts to sell or re-finance the vessel since her arrest, attributing the sudden and pervasive lack of interest in *Philomena* to TMF's having already saturated that already limited market.[6]

The Court was not persuaded. The Court specifically rejected Hurricane's contentions, finding them to be "based on hearsay information" (July 10, 2018 minute order, Dkt. 230, p. 2 of 5). Instead, the Court credited the testimony of Bank of America's representative, Kevin Mulholland, that Lenders had not marketed the vessel and had not approached a broker until February 20, 2018,

---

[4] TMF's counsel's unauthorized contact with Hurricane's vessel's captain also runs afoul of Rule 2-100 of California Rules of Professional Conduct (Communication With a Represented Party).

[5] See Declaration of Frank C. Brucculeri at ¶ 3, submitted concurrently with this Motion.

[6] See Loukopoulos Declaration, March 12, 2018, submitted in support of Hurricane's Opposition to Motion for Sale, Dkt. 132, at ¶ 7.

when they supposedly approached broker H. Clarkson & Co. for the first time (July 10, 2018 minute order, Dkt. 230, p. 2 of 5, citing Mulholland Declaration at ¶¶ 9 – 12).

Later-acquired emails and deposition testimony from BRS's Gregory Wauthier, the broker chosen by Lenders to render valuations of the vessels, put the lie to the statements of Lenders and of TMF's counsel. On January 29, 2018, Wauthier sent an email to Mulholland (of lender Bank of America) and Gregory Feldman (of Davidson Kempner, the principal for co-lender Burlington Loan Management), with the subject line, "Technical documentation." That email referenced their phone call of the preceding week and listed the specific vessel-related documents that Wauthier believed "should cover the matter."[7] The Court will note that the January 28, 2018 list of vessel-related documents from Wauthier is almost identical, even in the order in which they are listed, to the highly improper email demand to the captain of February 15, 2018.

In explaining that email he had written to Lenders, Mr. Wauthier testified as follows:

> Mr. Feldman, after the arrest of the Philomena, mentioned that there might be a possibility to look at a sale of the ship. I am a shipbroker and I tried to position myself to sell the ship. Because the ship was arrested, however, he asked me to make a list of all documents that a positive buyer would like to look at so that they could approach whoever was in charge of keeping those documents in one go, instead of having several back and forth.

(Wauthier, Vol. 2, at 245:15 – 25).[8] BRS, the brokerage that Wauthier works for,

---

[7] See Exhibit 57 to Wauthier deposition, Vol. II, of May 15, 2018, a true and correct copy of which is attached as Exhibit B to Brucculeri Declaration, submitted concurrently with this motion.

[8] All relevant excerpts from Wauthier deposition referenced in this motion are attached as Exhibit A to Brucculeri Declaration, submitted concurrently with this motion.



Kaye, Rose & Partners, LLP

had "informed potential buyers out there that the ship had been arrested and they should keep warm." That term, he explained, meant that potential buyers "should get ready if anything happens. Our job as shipbroker is to make people aware, make owners aware, and so this is exactly what we did." (247:5 – 20). Wauthier also made clear that, until Mr. Feldman had specifically informed him of *Philomena*'s arrest, he had not been aware of her arrest (247:21 – 25, 248:1 - 5). That testimony undermines the assumption that merely publishing an arrest in the *Los Angeles Daily Journal* necessarily makes potential buyers aware of the arrest.

The January and February emails, in conjunction with Wauthier's testimony, make clear that Lenders did attempt to pre-sell *Philomena*; that they attempted to do so through their designated shipbrokers; that they began those efforts at least in January of 2018, upending Mulholland's statement that they'd only first contacted a broker, Clarksons, in February of 2018; and that the statement of TMF's counsel—that it was his own office and not TMF, his client, who had initiated and directed the demand for those documents—was simply untrue. Lenders directed their shipbrokers to market the vessel well before asking Clarksons to do so on February 20, 2018, and the email demand on the ship's captain was a demand that originated with lender Davidson Kempner. All those facts support Hurricane's point that it was precluded from selling or refinancing the vessel once the prospective buyers in that limited market had already been solicited as potential purchasers of the vessel at a distressed sale price. As the accompanying declaration makes clear, the recently emerged facts shed light on the reasons why Hurricane's negotiations with prospective buyers had all failed: the vessel had already been prematurely marketed for sale at a distress-sale price that no arms-length transaction could compete with.[9] Not only were Lenders and

---

[9] See Declaration of Charilaos Loukopoulos, submitted concurrently with this

their agents marketing the vessel despite having no right to do so, they actually lied about having done so.

Had those newly acquired facts been before the Court at the time it decided TMF's motion for interlocutory sale, the Court would have had more than ample reason to deny that motion. Hurricane's previously advanced argument—that the costs of arrest are not "excessive" by any reasonable measure—would have remained true. But Hurricane's additionally advanced argument—that Hurricane had by no means delayed the securing of *Philomena*'s release but was, in practical terms, precluded from refinancing or selling her due to Lenders' underhanded involvement in the market for her sale—would have carried much more weight. At a minimum, the obvious contradictions in TMF's evidence—Bank of America's representation of its first attempt to broker the vessel, and TMF's counsel's transparent attempts to accept blame for the actions of its client—might have given the Court pause before ordering the sale of the *res* before the merits of TMF's underlying claims had been fully resolved at trial.

## CONCLUSION

Because critical testimonial and documentary evidence on the issue of Lenders' involvement in actively marketing *Philomena* for sale was only acquired well after the conclusion of briefing on the motion for interlocutory sale; because that evidence adds significant weight to Hurricane's argument about the impossibility of refinancing or selling the vessel; and because that same evidence upends TMF's claim that neither it nor Lenders had pre-marketed the vessel for sale, the Court should reverse its order granting TMF's motion for interlocutory sale.

---

Motion, at ¶¶ 8 – 12.

Given that the sale date is fast approaching, and that Hurricane intends to appeal the order of sale, Hurricane respectfully requests that the instant motion be decided promptly. A decision that arrives too close to the sale date of September 11, 2018 would unduly and irremediably prejudice Hurricane's rights to seek appellate review of the order that would permanently divest it of its rights in its vessel.

Dated: August 14, 2018

**KAYE, ROSE & PARTNERS, LLP**

By: *\/s/ Frank C. Brucculeri*
Frank C. Brucculeri
Bradley M. Rose
Attorneys for Defendant
HURRICANE NAVIGATION INC.

Kaye, Rose & Partners, LLP