KAYE, ROSE & PARTNERS, LLP
Bradley M. Rose, State Bar No. 126281
brose@kayerose.com
Frank C. Brucculeri, State Bar No. 137199
fbrucculeri@kayerose.com
169 S. Rodeo Drive
Beverly Hills, CA 90212
Phone: (310) 551-6555
Fax:   (310) 277-1220

Attorneys for Defendant and Counter-Claimant HURRICANE NAVIGATION INC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| TMF TRUSTEE LIMITED,<br><br>    Plaintiff,<br>v.<br><br>M/T MEGACORE PHILOMENA, her engines, boilers, tackles, and other appurtenances, etc., *in rem*; HURRICANE NAVIGATION INC., a Marshall Islands Corporation, *in personam*,<br><br>    Defendants.<br><br>And related cross-actions. | Case No.: 2:17-cv-9010-AGR<br><br>IN ADMIRALTY<br><br>**HURRICANE'S OPPOSITION TO TMF'S MOTION TO DISTRIBUTE PROCEEDS OF VESSEL SALE**<br><br>Room:   550<br>Judge:  Hon. Alicia G. Rosenberg |

## SUMMARY OF ARGUMENT

In its motion requesting that the Court presently distribute to TMF over $15.3 million, the vast majority of the proceeds from the vessel sale, TMF brazenly jumps the gun. Despite its repeated insistence that it holds "a valid mortgage against the vessel which entitles it to those proceeds" (Dkt. 385-1, pp. 2, 4, 6, 8), the true validity of that mortgage and TMF's actual entitlement to

1

those proceeds are the substantive questions that lie at the heart of this litigation. Those questions have not yet been fully adjudicated. They are, in fact, the precise questions currently under submission to the Court in the form of TMF's motion for summary judgment (Dkt. 206 – 214). And if that motion is ultimately denied, then those questions will be the focus of the pending trial. There exists no legal or equitable basis[1] for TMF's present request that the Court, in essence, advance to TMF the remedy it seeks in its motion for summary judgment, still pending the Court's decision.

TMF asserts that the same principles that allow a mortgageee to bid the amount of its claimed credit at the vessel auction should govern its current motion for immediate distribution of those sale proceeds. TMF acknowledges that the Court already denied TMF its claimed right to credit bid (Dkt. 338), but it now argues that the Court's rationales for that denial—the untimeliness of the request and the requirement for cash bids at auction—no longer pertain. Attempting to apply the current post-sale facts to the judicially-crafted custom of allowing credit bids at the sale, TMF merely re-asserts the primary argument underpinning its motion for summary judgment: that its "mortgage on the vessel entitles it to receive the proceeds of the sale," subject to the liens of certain other lienholders (Dkt. 385-1, pp. 3, 6 – 7). But the Court has yet to decide the validity of TMF's repeatedly asserted right to foreclose on the mortgage. TMF may not validly shortcut that pending substantive adjudication by pressing the Court to forego that substantive decision and simply grant it the remedy it had already requested. Were the Court to do so, Hurricane can't help but wonder what substantive issue would even remain for adjudication.[2]

---

[1] TMF cites no legal authority to support its unprecedented request to draw down on auction funds before a determination in its favor on the merits.

[2] Moreover, what assurance or security would Hurricane have in connection with

# ARGUMENT

**A.     TMF's motion baselessly requests a present award of over $15.3 million absent an actual adjudication of its rights to that award.**

The instant motion asks the Court to award TMF $15,381,356 of the $19 million currently on deposit in the Court's registry (Dkt. 385-1, pp. 1, 4, 6 – 8). Glaringly absent from its motion, however, is an actual legal basis for its request.

> *1.     Rule E(9)(b) in no way authorizes TMF's present request for an unreasoned award. The Rule contemplates the merit-based adjudication presently pending via summary judgment or trial.*

TMF in its motion twice makes reference to a federal rule but entirely fails to show how that rule would authorize the extraordinary relief requested. Specifically, it cites Supplemental Rule of Admiralty Rule E(9)(b), which, in its relevant part, provides that "the proceeds of sale shall be forthwith paid into the registry of the court ***to be disposed of according to law***." (Supp. R. Adm. Rule E(9)(b) (emphasis added). TMF cites that Rule, but then merely goes on to state, as if already a settled matter of law, that "TMF's mortgage on the vessel entitles it to receive the proceeds of the sale of the M/T MEGACORE PHILOMENA up to the value of its mortgage, subject to the priority claims of certain lienholders, parties that contributed custodial expenses, and the fees and expenses of the U.S. Marshal and the Broker allowed by the Court." (Dkt. 385-1, pp. 3, 7 of 8).

That assertion, which TMF here would wield as settled law, is, in fact, merely the principal argument at the core of its motion for summary judgment (Dkt. 206 – 214). That motion that is still awaiting the Court's decision (Dkt. 206 – 214). Hurricane as well as other lienholders have directly opposed TMF's claim that it holds a valid first preferred mortgage on *Philomena* under the laws of the Marshall Islands and that it has legitimately perfected its right to foreclose

___

its counterclaim for damages if TMF and lenders are permitted to leave the jurisdiction with both the vessel and the sale proceeds?

on its claimed maritime lien (Dkt. 254 - 258). The Court has not yet ruled on those critical assertions that TMF presently takes as established. Unless and until the Court adjudicates that dual question of law in TMF's favor, those questions remain unsettled. Given that Rule E(9)(b) only authorizes the disbursement of sale proceeds "according to law," and because no judgment presently entitles TMF to those proceeds "according to law," Rule E(9)(b) actually undermines TMF's present request.

>   2.   *TMF wrongly equates a theoretical, conditional right to credit bid at the vessel auction—a right that the Court expressly denied to TMF—with a present right to the proceeds from that sale*.

About two weeks before the scheduled vessel auction on September 11, 2018, TMF petitioned the Court allow it to bid up to the full amount of its claimed mortgage: between $37.9 and just over $38 million (Dkt. 303). The Court denied that motion, citing several factors that militated against TMF's position: that neither statute nor case law creates an actual legal entitlement to credit bid, refusing to interpret the local rule of the Central District as creating such an entitlement; that no published case could be found interpreting that particular local rule; that the order authorizing the sale had already been published and required bidding by cash; that prospective buyers had already made inquiries, with two having requested inspection of the vessel; that allowing the credit bid at that late juncture would have materially altered the terms of the order; and that it had seen no case in which a credit bid was authorized after the order authorizing the sale had already been issued (Dkt. 338).[3]

In urging the Court to award it the proceeds from the sale of the vessel, TMF essentially argues for a second opportunity to credit bid, but this time

---

[3] In its order denying TMF the ability to credit bid, the Court left open the question of whether it had jurisdiction to alter the terms of its sale order in light of Hurricane's appeal of that order to the Ninth Circuit Court of Appeals (Dkt. 338).

retroactively. TMF claims a right to have immediate rights to the proceeds as if it had been granted a right to credit bid, reasoning that the Court's stated rationales for having originally denied its ability to credit bid no longer apply, there now being "no issue with compliance with the [sale] Order, notice to the public, or the possible discouragement of other bidders." (Dkt. 385-1, p. 6 of 8). But those circumstances are no longer pertinent, of course, not because of any errors in the Court's original reasoning but because of the mere passage of time. TMF's claim that it should still be entitled to the extraordinary boon of a credit bid, but retroactively, after the sale, finds no legal support whatsoever.[4]

Neither of the two cases that TMF cites advances its strained argument. It cites *Neptune Orient Lines*,[5] a 20-year-old unpublished case from the Eastern District of Louisiana, and *Key Bank of Puget Sound*,[6] a 30-year-old case from the Western District of Washington, for the claimed proposition that credit bids have been granted "even where the mortgage or lien priority was subject to vigorous dispute" (Dkt. 385-1, p. 7 of 8). A critical feature of *Neptune Orient Lines*, however, curiously overlooked by TMF, is that before granting that lender's request to credit bid, the court had granted the lender's motion for recognition of its preferred mortgage.[7]

The *Key Bank of Puget Sound* case—and the only case TMF cited that is

---

[4] If the remedy that TMF seeks were available, every would-be secured creditor would be in a position to access the proceeds of the sale of the secured property before the underlying merits are determined. Yet TMF hasn't cited any authority recognizing such a novel remedy in any commercial context.

[5] *Neptune Orient Lines, Ltd. v. Halla Merch. Marine Co.*, 1998 WL 128993, at *4 (E.D. La. Mar. 20, 1998).

[6] *Key Bank of Puget Sound v. Alaskan Harvester*, 738 F. Supp. 398 (W.D. Wash. 1989).

[7] *Neptune Orient Lines* at *1, *3.

both published and derives from a court within this judicial circuit—is even less helpful to TMF's cause. The court in *Key Bank* ultimately allowed the lending bank the right to credit bid, and made sure that allowance was reflected on the order for sale of the vessel.[8] But the order of sale with its allowance for a credit bid were mere dicta at the end of the court's decision, a mere recitation of the practical ramifications of the court's decision that did not warrant comment. The only actual legal discussion and analysis in the decision centered on the bank's motion for summary judgment on its vessl lien, which the court granted.[9] That summary judgment ruling formed the basis of the particulars of the order for sale. The terms of that order were stated without analysis or comment. They were merely the practical implications of the grant of summary judgment. The *Key Bank* court got it right: it fully decided the merits of the bank's claim before ordering even the sale, much less the bank's right to bid the amount of its claimed lien at that sale. *Key Bank* in no way supports TMF's novel suggestion that it should be able to treat its still pending, unadjudicated claim as a present legally established right.

      3.    <u>Opportunity costs on the part of TMF or Lenders do not create a legal basis for accelerating an award before the merits are adjudicated</u>.

Lacking an actual legal basis for its audacious request, TMF attempts to persuade the Court with a nod toward sincerity. Fifteen million dollars, it argues, would be very useful to them. And being deprived of that money would result in "injury":

> As long as the funds remain in the Court registry, TMF and its Lenders will be deprived of the use of those funds for investment and they will lose their ability to obtain market rate interest or a return on investment. Those losses are not remediable because

---

[8] *Key Bank of Puget Sound*, 738 F.Supp. at 407.

[9] *Id*. at 399-403.

TMF's recovery under the mortgage is limited to the amount of the proceeds of the sale[,] and there is no other source from which TMF would be entitled to recover the losses it incurs under the mortgage while the funds remain in court. This injury will be avoided or substantially reduced if the court [sic] allows TMF to draw down now that portion of the purchase price balance deposited by the [sic] Hawkes that represents the mortgage amount in excess of the competing third-party claims against the vessel.

(Dkt. 385-1, p. 4). The notion that TMF and Lenders would make more profitable use of $15,381,356 than what it will earn sitting in an interest-bearing account might very well be true. But the mere existence of opportunity costs that would be borne by TMF or the Lender in no way creates a legal basis for the Court to simply award that money to either of them.

## CONCLUSION

TMF's request for present disbursement of its claimed share of the sale proceeds presupposes an adjudication of that issue that does not yet exist. The federal rules plainly require distribution of those proceeds only according to "law," but TMF can point to no such law, merely reiterating its unadjudicated argument that has not been decided in its favor. The cases it cites only undermine its novel argument for a retroactive "credit bid." And its plainly stated desire for the proceeds, while undoubtedly sincere, provides no legal basis for actually awarding them. TMF's entirely baseless motion should be denied.

Dated: October 9, 2018      KAYE, ROSE & PARTNERS, LLP

By: */s/ Frank C. Brucculeri*
    Frank C. Brucculeri
    Bradley M. Rose
    Attorneys for Defendant and
    Counter-Claimant HURRICANE
    NAVIGATION INC.

HURRICANE OPPOSITION TO TMF MOTION TO
DISTRIBUTE PROCEEDS OF VESSEL SALE