Neil B. Klein, Bar No. 142734
neilk@mckassonklein.com
Maria del Rocio Ashby, Bar No. 206282
mrashby@mckassonklein.com
**McKASSON & KLEIN LLP**
2211 Michelson Drive, Suite 320
Irvine, California 92612
Telephone: (949) 724-0200
Facsimile:   (949) 724-0201

Attorneys for: Plaintiff in Intervention
NOVELL INVESTMENTS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| TMF TRUSTEE LIMITED,<br><br>　Plaintiff,<br><br>vs.<br><br>M/T MEGACORE PHILOMENA, her engines, boilers, tackles, and other appurtenances, etc., *in rem*; HURRICANE NAVIGATION INC., a Marshall Islands Corporation, *in personam*,<br><br>　Defendants. | Case No.:  2:17-CV-09010 AGR<br><br>IN ADMIRALTY<br><br>**NOVELL INVESTMENTS, INC.'S OPPOSITION TO TMF TRUSTEE LIMITED'S MOTION FOR PARTIAL DISTRIBUTION OF PROCEEDS FROM SALE OF VESSEL**<br><br>**Hearing: Oct 30th 2018**<br>**Time: 10:00 a.m.**<br>**Courtroom: 550**<br>**Judge: Hon Alicia G. Rosenberg** |
| NOVELL INVESTMENTS, INC.,<br><br>　Plaintiff in Intervention,<br><br>vs.<br><br>M/T MEGACORE PHILOMENA, her engines, boilers, tackles, and other appurtenances, etc., *in rem*; HURRICANE NAVIGATION INC., a Marshall Islands Corporation, *in personam,*<br><br>　Defendants in Intervention. | |

-1-

## I. INTRODUCTION

TMF would like the Court to distribute over $15 million from proceeds within the Court Registry, moneys paid by a 3rd party buyer at the judicial sale, on the grounds it allegedly holds a valid mortgage against the vessel. However, TMF relies on the same principles that allow a mortgagee to credit bid at a judicial sale – which the Court previously rejected as to TMF, requiring a cash bid.

The problem for TMF is two-fold: first, the Court has not ruled on whether TMF has a valid preferred mortgage; and second, the authorities to support a credit bid do NOT provide any basis to pay monies from the Court Registry before a judgment has been granted – here, TMF's motion for summary judgment is still under submission by the Court. In fact, TMF has not provided a single case to support its theory of advance payment from judicial sale proceeds.

Specifically, the Court has yet to rule on (1) the existence of preferred status of TMF's mortgage; (2) TMF's right to enforce the mortgage; or (3) vessel owner Hurricane Navigation, Inc.'s default on its mortgage obligations (these issues were opposed by Novell and others based on the existence of genuine issues of material fact that prevent judgment in TMF's favor).

TMF's request for early distribution also flies in the face of its motion for interlocutory sale, where it argued that interlocutory sale would not be an unlawful deprivation of Hurricane's property, but rather "a necessary substitution of the proceeds of the sale, with all the constitutional safeguards necessitated by the in rem process." Dkt. No. 137 at ¶12. Now that the sale proceeds have been paid into Court, it wants to dismiss those "safeguards" and allow lenders, on whose behalf TMF acts, to take back what it paid, whereas those funds are meant to substitute for the *res* until entry of a final judgment.

In the meantime, it remains to be determined whether TMF's mortgage should be equitably subordinated to Novell's claim, based on TMF's inequitable conduct:

1  over-mortgaging the vessel, controlling and supervising the vessel's day to day
2  affairs, knowing the debtor's financial condition and reinstating/amending its loan
3  after a prior loan-to-value breach, and timing of the second (and questionable) loan-
4  to-value determination not long after Novell had funded a $1.625m prepayment due
5  to TMF, *which TMF knew was unsecured*.

6  In short, TMF's unsupported and improper request should be denied.

7  **II. Legal Argument**

8  **A. TMF Does Not Have a Judgment to Support Distribution**

9  In its motion, TMF makes reference to Supp. Admiralty Rule E(9)(b), without
10 explaining how this Rule supports the relief requested. Rule E(9)(b) provides that
11 proceeds of a sale shall be paid into the registry of the court "**to be disposed of**
12 **according to law**." But TMF does not cite any cases whereby the language
13 "according to law" in Rule E(9)(b) supports distribution before issuance of a
14 judgment or other final determination on the merits. On the contrary, the cases
15 consistently hold that distribution follows a judgment, not the other way around. See
16 e.g., *U.S. v. FV Milagros Z*, 2000 WL 33309872 (S.D. Cal.) (vessel sale proceeds
17 disbursed to pay judgments for intervenors and preferred ship mortgage lienholder,
18 entered after evidentiary showing to establish respective claims); *Taylor v. Trecor*
19 *Marine, Inc.,* 683 F. 2d 1361 (11th Cir. 1982) (vessel sale proceeds disbursed upon
20 entry of final judgment for plaintiff and intervenor).

21 In its motion, TMF alleges the evidence establishes it has a valid mortgage
22 against the vessel which entitles it to the vessel proceeds (Dkt. No. 385-1 at 1:7-8),
23 and refers to its motion for summary judgment/adjudication. The motion is currently
24 under submission, so there *has been no final determination* on (1) the existence or
25 preferred status of TMF's mortgage; (2) TMF's right to enforce the mortgage; or (3)
26 Hurricane's default on the mortgage obligations. As a result, there is no judgment
27 from which to satisfy TMF's request for distribution of over $15m in sale proceeds.

28

### B. Principles Allowing a Mortgagee to Credit Bid Are Not Applicable

TMF contends it is entitled to early distribution because "[c]ourts routinely allow mortgagees with a valid mortgage to credit bid on ships sold by the court." Dkt. No. 385-1 at 6:9-10. Of course, there has been no final determination that TMF holds a valid preferred mortgage or that Hurricane defaulted on the mortgage obligations.

But the Court denied TMF's request to credit bid. And the authorities cited by TMF in support of its novel argument are inapposite: the plaintiff in *Neptune Orient Lines Ltd. v. Halla Merch. Marine Co.*, 1998 WL 128993 (E.D. 1998) successfully moved for recognition of a preferred mortgage and authority to credit bid at the interlocutory sale; and the plaintiff in *Key Bank of Puget Sound v Alaska Harvester*, 738 F. Supp. 398 (W.D. Wa. 1989) was awarded summary judgment on the validity and enforcement of its preferred mortgage and authority to credit bid.

Both cases are simply not applicable, because (a) the Court denied TMF's request to credit bid, requiring a minimum $19m cash bid, and (b) the existence and validity of its preferred mortgage remains at issue. In any event, the vessel has already been sold at judicial auction, so there is no basis to bootstrap "credit bid principles" to an early distribution of sale proceeds without judgment.

### C. Premature Distribution Could Destroy Subject Matter Jurisdiction

In addition, Novell objects and requests a stay of any distribution to TMF until lien priority of remaining claimants is determined and the counterclaims by Hurricane are resolved. Novell's concern is that distribution of all the proceeds (after remaining intervenor and custodial legis claims are paid) could divest the Court of subject matter jurisdiction.

"A trial court's in rem jurisdiction in a case [in rem] may be furnished by the vessel, the proceeds of a judicial sale of the vessel, or security furnished in lieu thereof. *Taylor v. Trecor Marine, Inc.,* 683 F. 2d 1361 1362 (11th Cir. 1982). Here, proceeds from the judicial sale were deposited in the Court Registry as substitute

*res,* in place of the vessel. In some circuits when the *res* is no longer before the court, such as where proceeds are distributed, in rem jurisdiction is destroyed and any appeal from the court's decision is rendered moot. *Id.* (re 11th Cir.).

In the 9th Circuit, the district court retains jurisdiction over the res pending the outcome of an appeal, even without a stay. *Ventura Packers v. F/V Jeanine Kathleen,* 424 F.3d 852, 862 (9th Cir. 2005). However, it is unclear whether *Ventura Packers* would protect subject matter jurisdiction in this case, because TMF will likely transfer any distribution to foreign lenders, who are not parties in this action (and apparently not subject to the Court's jurisdiction). Once TMF transfers the $15m out of the Court's jurisdiction, the Court will be unable to restore the *res* if distribution is later determined to be in error.

### D. Granting Partial Distribution to TMF Would Be Inequitable

When it sits in admiralty this Court is a court of equity. And fairness dictates that lenders – real parties in interest behind TMF – should not be allowed to sidestep their burden of proof and acquire early distribution of the *res* before establishing its claim and removal of those funds from beyond the Court's reach.

Early distribution may also be inappropriate due to questions remaining about TMF's conduct that warrant equitable subordination of its loan. As stated above, this conduct included a questionable loan-to-value determination shortly after Novell funded a $1.625m prepayment due to TMF, which TMF knew was unsecured. By its involvement in and monitoring Hurricane's business activities and ability to pay the mortgage, and ensuring the Novell $1.625m prepayment, TMF set the stage to benefit itself at the expense of Novell. See e.g., *Key Bank of Puget Sound v Alaska Harvester*, 738 F. Supp. 398 (W.D. Wa. 1989); *Cantieri Navali Riuniti v. M/V Skyptron*, 621 F.Supp. 171, 187 (1985).[1]

---

[1] TMF claims that the priority of Novell's claims is in dispute. Novell disputes that contention, in part based on the doctrine of equitable subordination, and reserves the right to brief the claim in full.

## III. CONCLUSION

Based on the foregoing, Novell respectfully requests that the Court deny TMF's motion for partial distribution.

Respectfully submitted,

Dated: October 9, 2018          MCKASSON & KLEIN LLP

By: /s/ *Neil B. Klein*
    Neil B. Klein
    Maria del Rocio Ashby
    Attorneys for Plaintiff-Intervenor
    NOVELL INVESTMENTS, INC.