```
 1  KAYE, ROSE & PARTNERS, LLP
    Bradley M. Rose, (SBN 126281)
 2  brose@kayerose.com
    Frank C. Brucculeri, (SBN 137199)
 3  fbrucculeri@kayerose.com
    169 South Rodeo Drive
 4  Beverly Hills, California 90212
    Telephone: (310) 551-6555
 5  Facsimile: (310) 277-1220
 6
    Attorneys for Defendant
 7  HURRICAN NAVIGATION INC.
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| TMF TRUSTEE LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>M/T MEGACORE PHILOMENA, her engines, boilers, tackles, and other appurtenances, etc., in rem; HURRICANE NAVIGATION INC., a Marshall Islands Corporation, in *personam*,<br><br>Defendants.<br><br>AND RELATED CROSS-ACTIONS. | Case No.: 2:17-CV-9010-PA-(AGRx)<br><br>**DECLARATION OF FOTIOS FOURNARIS IN REPLY TO TMF TRUSTEE LIMITED RESPONSE (DKT. 551) AND STEPHANIE TOMBLING'S DECLARATION (DKT. 556-1. [IN RE O2 TRADING'S REQUEST FOR REIMBURSMENT OF CUSTODIA LEGIS EXPENSES]** |

I, Fotios Fournaris, declare as follows:

1. I am the Legal Representative of O2 Trading Ltd (hereinafter "02 Trading" ) and have personal knowledge of each and every one of the matters set forth herein and could and would testify truthfully thereto in a court of law if called upon to do so.

2. This Declaration is submitted in support O2 Trading Custodia Legis Claim and specifically by way of response to Stephanie Tombling's Declaration

1

(Dkt. 556-1). I am compelled to respond to Ms. Tombling's declaration because it again misses the point, is misleading and grossly incorrect - ignoring the content and import of the January 2020 independent Audit Report by Nexia certified auditors (hereinafter "Report," "Audit" or "Nexia Audit") to which Ms. Tombling's declaration responds.

3. In response to Miss Tombling Declaration paragraph 2, I note that paragraph 6 of the Nexia Report includes a table presenting the movements between O2 and Hurricane from all transactions between them resulting to the outstanding balance due to O2 as of 31/12/2017. This table stated that (i) there was an outstanding starting balance of $413,000 relating to the Time Charter period and (ii) there was an amount of $1,154,000 relating to payments made by o2 to 3rd parties during the CMA for bunkers, port expenses, canal expenses and commissions. Miss Tombling does not explain why these amounts were missed by TMF from the calculations presented in DKT 551 . Neither Miss Tombling herself made any reference to those amounts in her first report ( in DKT 551-1)
In my view there was no need to re-perform the procedures
described in Nexia Report to note that there was an outstanding balance relating to the time charter period (pre CMA) and also that there were payments from O2 to 3rd parties (during CMA). The presentation of the table in the Nexia Report was sufficient.

4. I note however now that Miss Tombling no longer challenging the Nexia Report analysis and does not challenge the conclusive figures shown in there (or the exact same figures from the Audited statements). I think now is undisputed that O2 - as of <u>December 31</u> and all in - owes zero to Hurricane but instead is owed money by Hurricane ( even after the receipt of the last voyage freight)

5. In response to Miss Tombling declaration para 3, in addition to the Report , Nexia also conducted an Audit.The Audited financial statements for 2017 are now on file ( see DKT 555 Ex A ). The Nexia Report refers to the Audited

statements and also states that the outstanding balance as of 31/12/2017 was reconciled with the Audited financial statements.

6. With regard to Miss Tombling declaration para 4, the contradictions in her own statements are alarming. Initially (in DKT 551-1) in her report the complaint was - wrongly - there was no Audit performed.

7. Now, after I've submitted the Audited statements with my last declaration, Miss Tombling had no choice than accepting there was an Audit performed. As a result her initial comments in DKT 551-1 are now inapplicable. Instead her new reservation is that somehow Nexia is not to be relied upon as an independent reviewer. Miss Tombling states that "*the fact that Nexia used evidence included in O2's financial statements that it had previously audited raises another significant issue with the reliability of Nexia report.*"

8. With this Ms. Tombling now confirms there was an Audit performed. What Ms. Tombling is now missing again is that this Audit contains figures, notes and undisputed conclusions. One can look at the Audit independently of the Report to ascertain what the position is between O2 and Hurricane.

9. The Report is separate and in addition to the Audited financial statements. It is a particular engagement. I submit that reliance on the Audited statements is sufficient on its own to establish the outstanding balances between O2 and Hurricane during the relevant time period.

10. The Report elaborates on how this is calculated and the conclusions therein are fully reconciled with the Audited statements. *Therefore, the Court can rely directly in the Audited financial statements* performed based on International Standards of Auditing (signed by an independent public accounting firm).

11. For completeness, I should also add that the Report - as stated at paragraph 4 - was performed with reference to International Standards of Related Services. It is common practice, and Miss Tombling is probably well aware that

auditors provide agreed upon procedures services (in compliance to International Standards).

12. In practice, any other firm engaged to prepare a similar Report would also rely on the work of the company's auditors (Nexia) as well as the audited financial statements.

13. The fact that Nexia are the auditors and also the reviewers of the Report **does not** raise any issue for the reliability of this report, but irrespective, one could ignore the Report and solely rely on the Audited statements, which reach precisely the same exact conclusions as those in the Nexia Report.

14. The exact wording in the Nexia Audited statements is "The outstanding balance due from Hurricane as of December 31, 2017 is $264 (thousand) and is presented in "Due from related parties," at the accompanying Balance Sheet." (see Dkt. 555, Exhibit A). Note that this statement was left un-redacted.

15. Ms. Tombling further states that "*a qualified audit opinion is usually issued when the auditor has not been provided with sufficient information to give an unqualified opinion or where there was a material issue in the application of the relevant accounting standards.*" Nexia, however, in signing the Audited statements state that (i) "We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our opinion, (ii) "In our opinion, except of the effects of the subject referred in the paragraph "Basis of qualified opinion" of our report, the accompanying financial statements give a true and fair view of the financial position of the above Company as of December 31, 2017, of its financial performance and its cash flows for the year then ended in accordance with the Generally Accepted Accounting Principles as adopted by the US." (Dkt. 555, Exhibit A, also left un-redacted)

16. The paragraph "Basis for Qualified Opinion" relates only to O2's ability to collect part of its accounts receivable (part of these accounts relate to the USD 264,000 Receivable from Hurricane).

4
DECLARATION OF FORTIOS FOURNARIS IN RESPONSE
TO STEPHANIE TOMBLING'S DECLARATION DK. 556-1

17. The exact wording in the Audited statements is "Basis for Qualified opinion" "For the amount of 100k USD included in the account "Trade Receivables" ( not related to Hurricane ) and for the amount of about 264k USD included in the account "Due from Related Parties" (related to Hurricane) we have not received any supporting evidence for the ability to collect these amounts and as a result we don't have any evidence if those amounts will be collected or not and what the resulting effects would have been in the Financial Statements (if not collected). (See, Dkt. 555, Exhibit A, left un-redacted).

18. For easy reference, I attach hereto at Exhibit A a true and correct un-redacted copy of the entire Independent Auditors Report as contained in the Audited financial statements (also including the parts referred above which were left un-redacted from the prior filing).

19. In response to Miss Tombling's declaration at paragraphs 4 and 5, Nexia had audited O2 financial statements for 2015 and 2016, therefore before conducting the 2017 Audit. On this basis - having previously reviewed transactions with Oxygen and Hurricane - it is clear that these entities are well known to Nexia who treated them since as Related parties (as Nexia continues to do in the 2017 Audit). The Audited statements refer to Related party transactions (also applicable to transactions with Hurricane).

20. The Auditor's letter refers to Receivables from Related party when addressing the balance of USD 264,000 due to O2 from Hurricane. I am surprised Ms. Tombling missed that the Report gives a full overview of the transactions under review including the Time Charter and CMA. These transactions were obviously reviewed by Nexia in the context of the Audited statements as well.

21. In response to Miss Tombling para 6/7 There is no specific explanation to why the payments by O2 to 3rd parties that were ignored by TMF and Miss Tombling. There is no specific explanation why TMF and Ms. Tombling ignored the outstanding balance from the Time Charter period.

Ms. Tombling's apparent justification is that the purpose of (her) report was not intended to provide an alternative view of the balance between O2 and Hurricane. On that basis (she) did not comment on every transaction mentioned in the Nexia report but instead focused on areas which she incorrectly maintains cast doubt.

22. Regarding Ms. Tombling' declaration at paragraph 8, she failed to address the point that O2 had already **prepaid in advance** the last voyage freight. Simply, O2 has been making advance freight prepayments (on account) since the commencement of the CMA period. For some inexplicable reason, TMF continues to pretend that O2's advances of freight did not exist or happen. In this respect, I only mean to note that the Nexia Report also makes reference to these "advances and prepayments."

23. As to paragraph 9 of her declaration, Ms. Tombling states: "*the scope of my work did not include a review of every single transaction shown in the bank statement provided.*" **This is her reply for not accounting (thus missing) sums in excess of USD $1,500,000. Sums missing from TMF's analysis also in DKT 551 (comprising of $413,000 due to O2 from the Time Charter PLUS $1,154,000 payments made by O2 to 3d parties).**

24. However, by way of evidence of her contradictions, I noted that Ms. Tombling did not include in the scope of her work the review of transactions amounting to over $1,5 million, but included the review and identification of rounding differences of insignificant effect (see paragraph 44 of her report, to which I responded). The explanation is probably that she did not comment on the $ 1,5 million payments because she had no doubt about these amounts. As stated in her declaration she commented only on areas which cast doubt. This is of no excuse to TMF disregarding those in Dkt 551.

25. In support of my earlier note at paragraphs 3-5 above, importantly Ms. Tombling states: "***my report does not purport to re-calculate the receivable balance owing to O2 by Hurricane and does not contain any***

6

*calculations."*

26. In response to paragraph that I continue to treat the procedures performed as part of Nexia's statutory audit of O2's financial statements, I say the Report refers and complies with the Audited statements, but irrespective, Ms. Tombling may only rely and focus on the Audit in order to conclude the same thing, i.e. the existence of negative balances due to O2.

27. In response to para 10 of Ms. Tombling's declaragtion, I note that as stated at the Report in paragraphs 3 & 7, Nexia received letters from the banks in order to confirm O2 balance as of 31/12/2017. As a result, third parties (the banks) confirmed the completeness and accuracy of O2 bank balances as of December 31, 2017. This is a common audit procedure to confirm the bank balances. Also. as stated at the Report paragraph 3, Nexia received bank receipts from Oxygen's bank account presenting the inflows from O2 relating to Hurricane during the CMA.

28. Finally in addressing - again - some technical points by Ms. Tombling in para 11 of her Declaration, I note as follows:

A. These relate to payments O2 made to Oxygen. The bank receipts proving that Oxygen received from O2 the amount of $20,000 and $212,000 were filed with the court a Dkt. 555, exhibit B.

B. The point is frankly insignificant and irrelevant. Irrespective of titles, the payment in reference is a Freight Receipt (Collection) under the CMA in respect of the first voyage during the CMA. Such receipt was credited to Hurricane as all freight receipts and is part of the total Freight Collections stated in the Report.

I declare under penalty of perjury pursuant to the laws of the United States and of the State of California that the foregoing is true and correct.

Executed on 20 March 2020 in Athens, Hellenic Republic (Greece).

_____
Fotios Fournaris